1

2                                                          FILED IN THE
                                                      U.S. DISTRICT COURT
                                                   EASTERN DISTRICT OF WASHINGTON
3
                                                   Feb 23, 2021
4
                                                     SEAN F. McAVOY, CLERK

5                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF WASHINGTON
6

7    DENA M.,[1]                          No.    4:20-CV-05057-EFS

8                         Plaintiff,

9            v.                           **ORDER GRANTING PLAINTIFF'S
                                          SUMMARY-JUDGMENT MOTION
10   ANDREW M. SAUL, the Commissioner     AND DENYING DEFENDANT'S
     of Social Security,                  SUMMARY-JUDGMENT MOTION**
11
                          Defendant.
12

13

14          Before the Court are the parties' cross summary-judgment motions.[2]

15   Plaintiff Dena M. appeals the denial of benefits by the Administrative Law Judge

16   (ALJ). She alleges the ALJ erred by 1) improperly weighing the medical opinions,

17   2) discounting Plaintiff's symptom reports, and 3) improperly determining there

18   were significant number of jobs Plaintiff could perform, erring at step five. In

19   _____

20   [1] To protect the privacy of the social-security Plaintiff, the Court refers to her by

21   first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

22   [2] ECF Nos. 9 & 13.

23

     ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 9, and denies the Commissioner's Motion for Summary Judgment, ECF No. 13.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(b), 416.920(b).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

1

2

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

3

4

5

6

7

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

8

9

10

11

12

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

13

14

15

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

16

17

[7] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

18

[8] *Id.* §§ 404.1520(c), 416.920(c).

19

[9] *Id.* §§ 404.1520(c), 416.920(c).

20

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

21

[11] *Id.* §§ 404.1520(d), 416.920(d).

22

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

23

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed Title II and XVI applications, alleging a disability onset date of January 28, 2014.[18] Her claims were denied initially and upon reconsideration.[19] Plaintiff appealed, and the Eastern District of Washington reversed and remanded for a new hearing. A second administrative hearing was held before Administrative Law Judge Caroline Siderius.[20]

In denying Plaintiff's disability claims, the ALJ made the following findings:

---

[14] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 287 & 289.

[19] AR 114, 120, 137, & 153.

[20] AR 1167-230.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

- Plaintiff met the insured status requirements through December 31, 2019;

- Step one: Plaintiff had not engaged in substantial gainful activity since January 28, 2014, the alleged onset date;

- Step two: Plaintiff had the following medically determinable severe impairments: obesity, fibromyalgia, asthma, tendinitis of the bilateral shoulders, cervical degenerative joint disease, and diabetes;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform sedentary work with the following limitations:

  [Plaintiff] can sit up to six hours, and stand or walk up to six hours, of an eight-hour workday. [Plaintiff] requires a sit/stand option. [Plaintiff] can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. [Plaintiff] can never balance, and can occasionally stoop, crawl, crouch, and kneel. [Plaintiff] can occasionally reach and lift overhead with either arm. [Plaintiff] must avoid exposure to odors, dusts, fumes, gasses, and environment irritants. [Plaintiff] cannot work at heights, and cannot operate heavy machinery/equipment. [Plaintiff] is limited to no more than ordinary office-level lighting or noise. She can perform simple, routine tasks with no detailed work.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

numbers in the national economy, such as touch-up screener, table
worker, and gauger.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the opinions of testifying experts Robert Kidder, M.D. and Jay Toews, Ed.D;

- partial weight to the examining opinion of William Drenguis, M.D.;

- some weight to the opinion of State agency psychological consultant Renee Eisenhower, Ph.D.;

- little weight to the examining opinion of Patrick Reilly, Ph.D. and treating opinions of Jung Lim, M.D. and Paval Gaba, M.D.; and

- no weight to the opinions that predated Plaintiff's filing date.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

---

[21] AR 1091-105.

[22] AR 1099-102.

[23] AR 1097-99.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.[25]

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[27] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29] The Court considers the entire record as a whole.[30]

---

[24] AR 1.

[25] *See* 20 C.F.R. §§ 404.981 & 422.201.

[26] 42 U.S.C. § 405(g).

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

### IV.    Analysis

**A.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff challenges the ALJ's assignment of little weight to Dr. Drenguis', Dr. Gaba's, and Dr. Lim's opinions. The Court agrees the ALJ erred in her weighing of Dr. Drenguis' medical opinion because it was not meaningfully explained and therefore the Court is unable to assess whether the ALJ's findings are supported by substantial evidence. However, Plaintiff fails to establish that the ALJ's weighing of the Dr. Gaba's and Dr. Lim's medical opinions were erroneous.

1.    <u>Standard</u>

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician who examines but did not treat the claimant, and 3) a reviewing physician who neither

---

Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[31] *Molina*, 674 F.3d at 1111.

[32] *Id.* at 1115 (quotation and citation omitted).

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

treated nor examined the claimant.[34] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[35]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[36] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[37] may be rejected for specific and germane reasons supported by substantial evidence.[38] The

---

[34] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[35] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[36] *Lester*, 81 F.3d at 830.

[37] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[38] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

1

2

opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[39]

3

4

    2.   <u>Dr. Drenguis</u>

On May 5, 2015, Dr. Drenguis performed a physical evaluation of Plaintiff.[40]

5

6

Dr. Drenguis diagnosed Plaintiff with fibromyalgia, left shoulder internal

7

8

derangement, diabetes mellitus, and a history of dizzy spells, and opined that

Plaintiff was limited in the following activities: standing, walking, and sitting up to

9

10

4 hours, with normal breaks; lifting and carrying up to 20 pounds occasionally and

11

12

10 pounds frequently; occasionally climb, balance, stoop, kneel, crouch, and crawl,

and frequently reach, handle, finger, and feel with her upper right extremity; and

13

14

occasionally reach and frequently handle, finger, and feel with her left upper

15

16

extremity; and limited in working around heights and heavy machinery.[41]

The ALJ gave partial weight to Dr. Drenguis' opinion and did "not see any

17

18

basis in his objective findings to support manipulation limitations other than on

19

the [Plaintiff's] ability to reach on the left." Plaintiff argues the ALJ gave full

20

weight to Dr. Drenguis opinion that Plaintiff "could only 'occasionally reach' with

21

'her left upper extremity'" and thus the ALJ found that the objective medical

22

evidence supported a left reaching limitation, reaching above the shoulder and in

23

---

[39] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[40] AR 715-19.

[41] AR 719.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

front and to the side of the body.[42] The Commissioner argued that the ALJ gave the opinion only partial weight and was not required to adopt any limitations she found unsupported in the record, and that even though the ALJ's discussion was not entirely clear regarding reaching, the ALJ's reasoning can be inferred from the four corners of the ALJ's decision, which is that the ALJ only found Dr. Drenguis' opinion supported to the extent that Plaintiff was limited to occasional reaching *above* her left shoulder.[43]

On this record, it is unclear what limitations the ALJ intended regarding Plaintiff's upper extremity left reaching limitations. The RFC allows Plaintiff to "occasionally reach and lift overhead with either arm."[44] Yet, the ALJ did not explain why the RFC limited only overhead reaching (as compared to reaching to the side and front) when Dr. Drenguis seemingly restricted Plaintiff to occasional reaching *in toto* (overhead, to the front, and to the side). As the testifying medical expert Dr. Wayne Kidder[45] testified, upper extremity lifting limitations are often

---

[42] ECF No. 9 at 6 (citing AR 719).

[43] ECF No. 13 at 3-4.

[44] AR 1096.

[45] Dr. Kidder opined Plaintiff could occasionally lift above her shoulder bilaterally with limited weight. AR 1178. When asked why, Dr. Kidder limited Plaintiff to occasionally reaching overhead and not in all directions, he explained that often, people with tendonitis and degenerative disease have the most problems with

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

noted as abduction limitations or as 90 degree limitations.[46]. Dr. Drenguis' physical examination of Plaintiff's shoulder revealed abduction right 180, left 190; adduction right 20, left 10; flexion right 180, left 90; and extension right 20, left 10.[47] Thus, considering this testimony by Dr. Kidder and Dr. Drenguis' physical examination findings, it seems that Dr. Drenguis' limited Plaintiff to not only occasional overhead reaching but *all* reaching. Yet, while the ALJ gave great weight to Dr. Drenguis' reaching opinion, the RFC only restricted overhead reaching.

This discrepancy is consequential because the vocational expert testified that there were no sedentary jobs available if Plaintiff could only reach occasionally.[48] Without more explanation by the ALJ, it is unclear whether the RFC that "Plaintiff can occasionally reach and lift overhead with either arm"

_____

lifting above their shoulders and often are not symptomatic when lifting an object in front of them. AR 1183. However, Dr. Kidder did not base this opinion on any particular examination of Plaintiff that showed only problems reaching overhead, but rather a general understanding of tendonitis and degenerative disease. *Id.*

[46] AR 1184.

[47] AR 718. Dr. Drenguis' physical examination also revealed that Plaintiff's "[l]eft shoulder is diffusely tender with marked tenderness over the supraspinatus and biceps tendons."

[48] AR 1211.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

included Dr. Drenguis' opinion about Plaintiff's restricted ability to reach on the left.[49]

3.    <u>Dr. Lim</u>

On May 15, 2014, Dr. Lim completed a WorkFirst Form for Plaintiff.[50] Dr. Lim diagnosed Plaintiff with cognitive impairment with memory loss, dizziness, and gait instability and opined Plaintiff would have difficulty remembering and multi-tasking, frequent confusion/disorientation, difficulty walking and maintaining balance and severely limited in lifting and carrying. Dr. Lim opined these limitations would last for six months.

The ALJ discounted Dr. Lim's opinion because 1) it was check-box form with little meaningful explanation and 2) inconsistent with the longitudinal medical record.[51]

As to the ALJ's findings that Dr. Lim's check-box opinion was not explained, an ALJ may permissibly reject opinions that do not offer any explanation for their

_____

[49] AR 1096 & 1100.

[50] AR 503-05.

[51] AR 1101.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 13

limitations.[52] Individual medical opinions are preferred over check-box reports.[53] An ALJ may permissibly reject opinions that do not offer any explanation for their limitations.[54] However, if treatment notes are consistent with the opinion, a check-box opinion may not automatically be rejected. Here, the ALJ rationally found that Dr. Lim's limitations were not explained. Dr. Lim provided no explanation for his opined limitations nor was his diagnosis supported by testing or lab reports.[55] The ALJ acknowledged that Dr. Lim appeared to treat Plaintiff as a neurologist in the past but noted none of Dr. Lim's treatment notes appeared in the record. This was a specific and legitimate reason supported by substantial evidence to discount Dr. Lim's opinion.

The ALJ's finding that Dr. Lim's gait instability opinion was inconsistent with the longitudinal medical record is rational and supported by substantial evidence. Whether a medical opinion is consistent with the longitudinal record is a

---

[52] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported); *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996).

[53] *Bray*, 554 F.3d at 1228; *Crane ,* 76 F.3d at 253.

[54] *Bray* 554 F.3d at 1228(; *Crane,* 76 F.3d at 253.

[55] AR 503.

factor for the ALJ to consider.[56] The ALJ cited to multiple medical records throughout her opinion showing Plaintiff often presented with a normal gait.[57] That the longitudinal medical record was inconsistent with Dr. Lim's opinion was a specific and legitimate reason to discount the opinion.

Lastly, temporary limitations are not enough to meet the durational requirement for a finding of disability.[58] The ALJ noted that Dr. Lim's assessed limitations were limited to six months. Thus, any error in the ALJ discounting Dr. Lim's opinion was harmless.

---

[56] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

[57] *See e.g.,* AR 530, 550, 554, 557, 561, 565, 572, 581, 592, 612, 632, 711, 717, 761, 797, 820, 859, 1423, 1433, 1440, 1443, 1451, 1502, & 1507.

[58] 20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning").

1

2

4.    Dr. Gaba

3

Dr. Gaba began treating Plaintiff in 2013. On July 31, 2014, Dr. Gaba

4

completed a WorkFirst Form for Plaintiff.[59] Dr. Gaba diagnosed Plaintiff with

5

dizziness, cognitive impairment, memory issues, visual floaters/blurry vision,

6

numbing and tingling intermittent, and optic neuritis diagnosed by an

7

ophthalmologist. Dr. Gaba opined Plaintiff would be unable to lift, stand, sit,

8

concentrate, or bend over. Dr. Gaba opined these limitations would exist for three

9

months, pending an evaluation diagnosis.

10

The ALJ discounted Dr. Gaba's opinion because it was inconsistent with his

11

treatment notes from the day of the evaluation and was check-box form with little

12

meaningful explanation.

13

As to the ALJ's findings that Dr. Gaba's check-box opinion was not explained

14

and not supported by treatment notes, an ALJ may permissibly reject opinions that

15

do not offer any explanation for their limitations.[60] Dr. Gaba provided no

16

explanation as to his opined limitations and was "unsure about the exact cause" of

17

Plaintiff's symptoms.[61] However, Dr. Gaba was Plaintiff's primary care physician.

18

19

[59] AR 507-09.

20

[60] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)

21

(recognizing that a medical opinion may be rejected if it is conclusory or

22

inadequately supported); *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996).

23

[61] AR 508.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion.[62] The record contains many of Dr. Gaba's treatment notes discussing Plaintiff's symptoms and physical assessments.[63] Dr. Gaba also reviewed multiple treatment notes from specialist he referred Plaintiff to, including a gastroenterologist and rheumatologist.[64] Outside of Dr. Gaba's treatment notes from the day he filled out the WorkFirst form, the ALJ does not discuss Dr. Gaba's other numerous treatment notes when discounting his opinion. This is not a specific and legitimate reason to dismiss Dr. Gaba's opinion.

---

[62] 20 C.F.R. §§ 404.1527(c), 416.927(c).

[63] *See e.g.,* AR 496 (The brain is remarkable for bihemipheric subcortical and deep white matter foci . . . These white matter foci are abnormal, but nonspecific. These can be seen in the setting of migraine."); AR 557 ("discussed referral to rheumatology if labs concerning"); AR 569 ("anxiety uncontrolled, increase Wellbutrin to 300 mg"), AR 736 ("Positive for myalgias, arthralgias, stiffness and neck pain. Negative for back pain, joint swelling, gout, and neck stiffness. Left shoulder pain."); & AR 740 ("Left shoulder: [Plaintiff] exhibits crepitus . . . normal range of motion (with extension and abduction more than 30 degrees. Empty can test positive), no tenderness and no bony tenderness (tenderness noted in anterior and lateral aspect of left shoulder.")).

[64] AR 525-37.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

However, temporary limitations are not enough to meet the durational requirement for a finding of disability.[65] The ALJ noted that Dr. Gaba's assessed limitations were limited to three months. Thus, any error in the ALJ discounting Dr. Gaba's opinion was harmless.

**B.     Plaintiff's Symptom Reports: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[66] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific,

---

[65] 20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning").

[66] *Molina*, 674 F.3d at 1112.

clear and convincing reasons' for the rejection."[67] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with Plaintiff's conservative treatment, Plaintiff's work history, Plaintiff's activities of daily living, and the objective medical evidence.[68]

First, the ALJ erred in rejecting Plaintiff's testimony on account that it was inconsistent with her record of "conservative treatment."[69] Specifically, that Plaintiff did not receive "regular rheumatologist treatment" when her primary problem is fibromyalgia.[70] "Any evaluation of the aggressiveness of a treatment regime must take into account the condition being treated."[71] "Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community."[72] Because the ALJ did not specify what "more aggressive treatment options [were] appropriate or available," it would be unreasonable to discredit Plaintiff "for failing to pursue non-conservative treatment options where

---

[67] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[68] AR 1097-98.

[69] AR 1098.

[70] AR 1098.

[71] *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017).

[72] *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004).

none exist."[73] Furthermore, Dr. Gaba referred Plaintiff to a rheumatology specialist Dr. Flavin.[74] Dr. Flavin diagnosed Plaintiff with fibromyalgia and prescribed an anticonvulsant, Gabapentin, to help with her symptoms. Dr. Flavin determined Plaintiff could follow up with her primary care physician for ongoing treatment.[75] Fibromyalgia is diagnosed "entirely on the basis of patients' reports of pain and other symptoms," and "there are no laboratory tests to confirm the diagnosis."[76] Without more, the ALJ's characterization of Plaintiff's fibromyalgia care as "conservative" is not supported by substantial evidence and does not suffice as clear and convincing reason to reject her symptom testimony.

Second, evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's claim that she is unable to work.[77] Plaintiff argues the ALJ failed to offer any explanation as to why her unemployment is inconsistent with her symptom reports and that the record contains "numerous medical opinions supporting disability" during Plaintiff's gap

---

[73] *Lapeirre-Gutt v. Astrue*, 382 F.App'x 662, 664 (9th Cir. 2010).

[74] AR 700-07.

[75] AR 701-02.

[76] *Barnhart*, 379 F.3d at 590.

[77] *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); 20 C.F.R. § 404.1529 (work record can be considered in assessing reported symptoms); 20 C.F.R. § 416.929 (same).

in earnings from 2006 through 2009.[78] The Commissioner does not address this issue. The ALJ cites to no records nor discusses how Plaintiff's "inconsistent work history" "suggest[s] the best explanation of [Plaintiff's] current unemployment likely involves factors other than her current medical conditions."[79] Without more, the ALJ's characterization of Plaintiff's work history is not supported by substantial evidence and does not suffice as clear and convincing reason to reject her symptom testimony.

The ALJ also discounted Plaintiff's symptom reports because they were inconsistent with her activities of daily living."[80] An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity.[81] However, many "activities are not easily transferable to what may be the more grueling environment of the workplace."[82] The ability to care for young children without help has been considered an activity that may undermine claims of totally disabling pain.[83] However, an ALJ must make specific findings before relying on

---

[78] ECF No. 9 at 16-17.

[79] AR 1098.

[80] AR 24.

[81] *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

[82] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[83] *Massanari*, 261 F.3d at 857.

childcare as an activity inconsistent with disabling limitations.[84] The ability to care for others without help has been considered an activity that may undermine claims of totally disabling pain.[85] However, if the care activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity.[86] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may also find these activities inconsistent with the reported disabling symptoms.[87] Here, the ALJ highlighted Plaintiff cared for her four children (ages 20 (twins), 16, and 11),[88] three of whom had special needs,[89] could make simple meals, wash dishes and laundry, grocery shop, and manage her finances.[90] Plaintiff consistently testified that her older children and mother helped

---

[84] *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

[85] *Rollins*, 261 F.3d at 857.

[86] *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

[87] *Molina*, 674 F.3d at 1113.

[88] At the time of the alleged onset date, Plaintiff's oldest children were 14 and the youngest was 5. AR 1196.

[89] The Court notes outside of one progress note, nothing in the record discusses Plaintiff's children having special needs.

[90] AR 1098.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Plaintiff with caring for her younger children and household chores.[91] In order for Plaintiff's cited activities to be deemed "high-functioning activities of daily living" constituting a clear and convincing reason to discount Plaintiff's symptoms, the ALJ needed to have more meaningfully articulated this finding. These cited activities, which can be achieved in relatively short periods of time and not on an everyday basis, do not "contradict claims of a totally debilitating impairment."[92]

Lastly, the ALJ discounted Plaintiff's symptom reports because they were inconsistent with the objective medical evidence that the ALJ deemed to be quite unremarkable, as she ambulated normally, demonstrated no signs of chronic illness, and her mental status exams showed only intermittent anxiety and flat affect, with the majority normal.[93] On remand, the ALJ is to explain why Plaintiff's observed normal gait served as a basis to discount her symptoms related to the pain she experiences when reaching with her upper extremities and bending her back and neck. Plaintiff's treating and examining physicians agreed Plaintiff consistently showed symptoms consistent with headaches, fatigue, nausea, pain, dizziness, anxiety, depression, and lapses in concentration and persistence.[94] The

---

[91] AR 70-72, 356-57, 379-80, & 1196.

[92] *Molina*, 674 F.3d at 1112-13.

[93] AR 1097-98.

[94] *See e.g.*, AR 439 (positive for headache and dizziness); AR 533 (light headed or dizzy, numbness or tingling sensations, frequent or recurrent headaches, memory

ALJ found Plaintiff demonstrated some of these symptoms.[95] Additionally on remand, the ALJ is to explain how Plaintiff's demonstrated symptoms, including but not limited to anxiety, depression, lapses in concentration and persistence,

_____

loss); AR 569 (anxiety uncontrolled, increase Wellbutrin to 300 mg daily); AR 525 (fatigue, sweats, back pain, weakness of muscles/joints, muscle pains or cramps, difficulty waling, numbness or tingling sensations, tremors, frequent or recurrent headaches, memory loss); AR 530 (normal gain and station, crepitation, defects, tenderness, masses, effusion, decreased rate of motion, instability, atrophy or abnormal strength or tone in head neck spine, ribs, pelvis or extremities); 572 (Plaintiff envaulted by neurology, cardiology, ENT, endocrinology); AR 696 (affect: depressed, anxious, shallow intensity; mood: depressed and nervous, congruent affect); AR 701 ("positive tender points in the classic fibromyalgia distribution"); AR 732 (referral to chronic fatigue clinic); & AR 736, 739, 744, 747, 749 752, & 758 (positive for fatigue).

[95] AR 1092 ("Notably, [Plaintiff's] fibromyalgia causes pain severe enough to damage her ability to persist in tasks.") ("[Plaintiff] has demonstrated longstanding weakness and some positive impingement signs bilaterally, always worse on the left." "[Plaintiff] has had problems with range of motion in the left shoulder."); & AR 1095 ("[Plaintiff] has reported pain and other fibromyalgia symptoms cause lapses in concentration and persistence. I find evidence supporting this claim . . . but this limitation is not due to mental impairments.").

migraines, and limited range of motion in the left shoulder, are inconsistent with the debilitating symptoms of fibromyalgia.

Finally, assuming that the ALJ's description of Plaintiff's "psychological observations being within normal limits" is a reasonable finding supported by substantial evidence, this sole reason, which is based on the ALJ's interpretation of the objective medical evidence, cannot serve as the sole basis on which to discount Plaintiff's symptom report.

In summary, Plaintiff establishes the ALJ erred by discounting Plaintiff's symptom reports.

**C.    RFC: The ALJ must reevaluate.**

Because the ALJ's RFC was based on an erroneous weighing of the medical evidence and Plaintiff's symptom reports, remand is required. If the ALJ does not fully credit Dr. Drenguis' reaching limitation, theALJ on remand must more meaningfully explain how Plaintiff's reported symptoms, including pain in upper left extremity, headaches, fatigue, dizziness, anxiety, depression, and lapses in concentration and persistence, are inconsistent with the medical record and then reassess Plaintiff's RFC and proceed with a new step-five analysis. In evaluating whether a claimant's RFC renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods.[96] The failure to do so is error.

---

[96] *Revels*, 874 F.3d at 662.

**D.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted.

The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[97] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[98]

The Court finds that further development is necessary for a proper disability determination. On remand, the ALJ is to reevaluate Dr. Drenguis' medical opinion related to Plaintiff's upper left extremity reach, consider any additional evidence presented, meaningfully explain how Plaintiff's reported symptoms are inconsistent with the medical record and then reassess Plaintiff's RFC and proceed with a new step-five analysis.

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 9**, is **GRANTED**.

---

[97] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[98] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

1

2    2.    The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is

3         **DENIED**.

4    3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

5         REVERSING and REMANDING the matter to the Commissioner of

6         Social Security for further proceedings consistent with this

7         recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

8    4.    The case shall be **CLOSED**.

9    **IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

10   provide copies to all counsel.

11       **DATED** this 23rd day of February 2021.

12

13                                    _____
                                         EDWARD F. SHEA
14                                    Senior United States District Judge

15

16

17

18

19

20

21

22

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 27